COURT OF APPEALS
DECISION
DATED AND FILED

February 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* **WIS. STAT. § 808.10 and RULE 809.62.**

**Appeal No. 2025AP498**

**STATE OF WISCONSIN**

Cir. Ct. No. 2024CV215

**IN COURT OF APPEALS
DISTRICT II**

ALEXANDER GOHLKE AND ACACIA GOHLKE,

   PLAINTIFFS-APPELLANTS,

V.

WEST BEND INSURANCE COMPANY,

   DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Fond du Lac County: DOUGLAS R. EDELSTEIN, Judge. *Affirmed*.

Before Gundrum, Grogan, and Lazar, JJ.

¶1     GUNDRUM, J.   Alexander Gohlke and Acacia Gohlke, husband and wife, appeal from a grant of summary judgment in favor of West Bend Mutual Insurance Company (West Bend), dismissing their action.  Seeking underinsured motorist coverage, the Gohlkes argue the circuit court erred in determining

Alexander was not "occupying" a covered auto when a vehicle struck him while he was operating a concrete-cutting saw on a public highway. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

¶2 The Gohlkes filed a complaint against West Bend seeking a declaratory judgment that the insurance policy West Bend issued to Alexander's employer provides underinsured motorist coverage for the Gohlkes with regard to the accident. The parties both requested summary judgment, which the circuit court granted in favor of West Bend, concluding, based on the "plain language" of the policy and "the ordinary meaning of the term occupying," that the Gohlkes had "no claim … within the underinsured motorist provision" of the policy. The Gohlkes appeal.

## DISCUSSION

¶3 We review de novo a circuit court's grant of summary judgment. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶11, 318 Wis. 2d 622, 768 N.W.2d 568. "Summary judgment is properly granted if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Secura Ins. v. 33 Allenton Venture, L.L.C.*, 2023 WI App 3, ¶4, 405 Wis. 2d 700, 985 N.W.2d 109 (quoting *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶22, 268 Wis. 2d 16, 673 N.W.2d 65). Where, as here, the relevant facts are undisputed, we review de novo the circuit court's construction and application of the terms of an insurance contract. *See Kemp v. Feltz*, 174 Wis. 2d 406, 410, 497 N.W.2d 751 (Ct. App. 1993); *First Weber Grp. N. Wis., LLC v. Guyant*, 2011 WI App 84, ¶11, 334 Wis. 2d 790, 800 N.W.2d 494.

¶4     In this case, a vehicle struck Alexander as he was cutting concrete on the side of a roadway with a saw he previously had unloaded off a trailer attached to a company truck. At the time of the accident, Alexander was approximately 20 feet from the truck and 15 feet from the trailer and was "actively cutting concrete" with the saw. The saw required a continuous supply of water for cooling, and this was provided by water pumped through a one-inch-thick hose running from the saw, through the trailer, and to a tank bolted to the bed of the truck. Alexander began operating the saw at approximately 7:30 a.m., after driving it off of the trailer and onto the highway. Aside from requiring the water provided by the tank on the truck, the saw operated independently from the truck and the trailer and possessed its own engine, steering mechanism, and transmission. Alexander had already made his first cut on the highway surface and was in the process of making his second when he was struck at approximately 8:15 a.m., about an hour after he had parked and exited the truck.

¶5     West Bend's policy provides coverage for "[a]nyone 'occupying' a covered 'auto'" and defines "'[o]ccupying'" as "in, upon, getting in, on, out, or off." While the truck and trailer were covered autos under the policy, the saw was not.

¶6     The Gohlkes argue that at the time Alexander was struck, he was legally "occupying" either the truck or the trailer, or both, because he was "physically connected to [them] while acting in reference to [them]." The physical connection, they explain, was by virtue of the hose that carried water from the tank on the truck through the trailer to the saw Alexander was operating on the highway. They also argue they had a reasonable expectation of coverage and that "the facts demonstrate it was the intent of the parties to cover users of these vehicles in their ordinary use." Finally, they assert that the policy language is ambiguous and should be resolved in favor of coverage.

¶7  In support of their position that Alexander was "occupying" a covered vehicle at the time he was struck, the Golhkes rely heavily upon *Moherek v. Tucker*, 69 Wis. 2d 41, 230 N.W.2d 148 (1975), *Sentry Insurance Co. v. Providence Washington Insurance Co.*, 91 Wis. 2d 457, 283 N.W.2d 455 (Ct. App. 1979), and *Kreuser by Kreuser v. Heritage Mutual Insurance Co.*, 158 Wis. 2d 166, 461 N.W.2d 806 (Ct. App. 1990).  These cases do not carry the day for the Gohlkes.

¶8  In *Moherek*, the plaintiff, a passenger of the covered vehicle, was injured when he stood behind the vehicle and held its spare tire up against its rear bumper "to protect [it] from the front bumper of a second car that [was] about to push it."  69 Wis. 2d at 42.  A third vehicle hit the second, pinning the tire-holding plaintiff between the covered and second vehicles, injuring him.  *Id.* at 43.  The insurance policy provided coverage for those "occupying" the vehicle, defined as being "in or upon, entering into or alighting from" it.  *Id.* at 44.  Our state supreme court stated that the plaintiff "[c]learly … was not entering into or alighting from the automobile nor was he in the car at the time of the accident."  *Id.*  It concluded, however, that he had been "upon" the vehicle, and thus occupying it, because "he had very close physical contact" with the covered vehicle and "[e]verything that he did after getting out of the vehicle [45 minutes earlier] and especially at the time that his injury occurred had to do with trying to start the vehicle again so that he and his companions could continue on their journey."  *Id.* at 48.

¶9  In *Sentry*, this court concluded there was coverage for a passenger who had just exited a covered vehicle and was walking around the front of it to reach the sidewalk when the vehicle was struck from behind by a second vehicle, which caused the covered vehicle to strike and injure the passenger.  91 Wis. 2d at 458-59.  As in *Moherek*, the policy in *Sentry* provided that "occupying" meant "in or upon or entering into or alighting from."  *Sentry*, 91 Wis. 2d at 459.  This court concluded

4

the passenger "had not completed his act of alighting from the [vehicle]" and thus "had not ceased occup[ying]" it at the time of the accident. *Id.* at 460-61.

¶10 In *Kreuser*, the plaintiff was injured under the following circumstances: (1) she was waiting at a street corner to be picked up by the driver with whom she carpooled; (2) the driver had begun his maneuvers to pull the covered vehicle to the curb to pick her up; (3) the plaintiff had started to turn her body "so that she would be in a position to enter his automobile"; and (4) she was approximately ten feet from the vehicle at the time it was struck from behind by a motorcyclist who then also struck her. 158 Wis. 2d at 168-69. As in *Moherek* and *Sentry*, coverage in *Kreuser* turned on whether the plaintiff was "occupying" the covered vehicle, with "getting into" the vehicle listed as one way of "occupying" it. *Kreuser*, 158 Wis. 2d at 171. We expressed that "[w]hile the insurance policy's definition of 'occupying' d[id] not appear to be ambiguous when considered in a vacuum, it becomes ambiguous when determining the scope of coverage in fact situations such as that presented in this case." *Id.* at 173. Considering the "nature of the act engaged in at the time of the injury," "the intent of the person injured," and "whether the injured person was within the reasonable geographical perimeter of the vehicle," we concluded the plaintiff was occupying the vehicle at the time of the injury because she "was within ten feet of [the] vehicle and she was beginning to turn to prepare to enter the vehicle when she was struck by the motorcycle. There is no doubt that both her intent and [the] intent [of the driver of the vehicle] was to have [her] occupy the automobile." *Id.* at 173-74. We added, "[w]e are satisfied that an ordinary lay person would expect that people preparing to board an automobile come within the definition of occupying and would be afforded coverage if injured during the boarding process." *Id.* at 174.

5

¶11   *Moherek*, *Sentry* and *Kreuser* do not aid the Gohlkes because, unlike in the instant case, in each of those cases, the factual scenarios were such that they at least arguably satisfied the key "occupying" definition at issue. When the passenger in *Sentry* was injured, he was immediately in front of the covered vehicle and had just exited it seconds earlier, so it is not surprising we were able to conclude he "had not completed his act of alighting from the car." 91 Wis. 2d at 461. In *Kreuser*, the plaintiff was within ten feet of the covered vehicle that was stopping to pick her up, and she had begun the physical motions to enter it when she was injured. 158 Wis. 2d at 173-74. Again, there is no surprise that any ambiguity in the "occupying" definition of "getting into" was resolved in favor of coverage.

¶12   Unlike *Sentry* and *Kreuser*, *Moherek* focused on the same "occupying" definition at issue in the instant case, "upon." As noted, the plaintiff in *Moherek* was holding the covered vehicle's spare tire against the covered vehicle at the time of injury and thus "had very close physical contact" with the vehicle; so close in fact that the collision resulted in the plaintiff being pinned against the covered vehicle. 69 Wis. 2d at 48. Thus, there is nothing shocking about our supreme court resolving ambiguity with the word "'upon,' in relation to 'in' and 'entering into or alighting from,'" *see id.* at 45, in favor of coverage, especially where the court further noted that "[e]verything [the plaintiff] did after getting out of the vehicle [45 minutes earlier] and especially at the time that his injury occurred had to do with trying to start the vehicle again so that he and his companions could continue on their journey," *id.* at 48.

¶13   We conclude the circuit court in the case now before us properly construed the insurance contract language and properly applied it to the relevant, undisputed facts. This is not even a close call. Unlike the plaintiff in *Moherek*, Alexander was not in "very close physical contact" with either the truck or trailer at

the time he was struck and injured; he was 15 feet from the trailer and 20 feet from the truck. *See Moherek*, 69 Wis. 2d at 48. Indeed, the only physical connection at all between him and the truck or trailer at the time he was struck was by way of a one-inch-thick hose carrying water to the saw he was operating. Alexander "[c]learly … was not [in or getting in, on, out, or off] the [truck or trailer] at the time of the accident." *See id.* at 44. Neither could it be said that he was "upon" either the truck or trailer at the time he was struck. No legitimate stretch of the English language could shoehorn these facts into coming within the meaning of the word "upon"; there is zero ambiguity that Alexander was not upon either the truck or trailer at the time of his injury. Furthermore, unlike the plaintiff in *Moherek*, who for the 45 minutes he was outside of the covered vehicle remained constantly focused on the vehicle and getting it to function so he could continue on his journey in it, which was "especially [true] at the time that his injury occurred," Alexander was not focused on either the truck or trailer during his 45 minutes away from them. *See id.* at 48. He instead was focused on performing his duties of cutting concrete on the road, which was "especially [true] at the time that his injury occurred." *See id.* No insured could reasonably expect he or she would be covered under the policy in light of its language and the facts of this case.

*By the Court.*—Judgment affirmed.

Recommended for publication in the official reports.